LEWIS N. SANDLER AND RICHARD M. SANDLER, INDIVIDUALLY AND AS EXECUTORS OF THE ESTATE OF MAURICE SANDLER, DECEASED, PLAINTIFFS-APPELLANTS, v. NEW JERSEY REALTY TITLE INSURANCE COMPANY, AN INSURANCE CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued November 8, 1961—Decided January 22, 1962.

*Mr. Richard M. Sandler* argued the cause for plaintiffs-appellants (*Messrs. Lowenstein & Spicer,* attorneys; *Mr. Donald G. Marshall,* on the brief).

*Mr. Thomas S. Murphy* argued the cause for defendant-respondent (*Messrs. Gassert, Murphy & Gassert,* attorneys; *Mr. Thomas S. Murphy,* of counsel and on the brief).

The opinion of the court was delivered by

HANEMAN, J. Some time prior to July 24, 1946, Maurice Sandler (Sandler) contemplated the purchase of a parcel of land in the Township of Springfield from Wil-

fred Weber and his wife. Prior to acquisition of the property, Sandler, through his lawyer, made application to defendant for a title examination and a title insurance policy. The report prepared by defendant showed a fee simple title in the Webers subject to exceptions not here material.

On July 24, 1946 the Webers conveyed the said land to Sandler by warranty deed, recorded in Book 1567, page 153 of the Register of Union County. Defendant issued its policy of title insurance to Sandler on July 25, 1946, agreeing therein to:

"indemnify, keep harmless and insure [him] and the person or persons upon whom the insured estate or interest devolves * * * by descent, devise, bequest or the laws governing intestacy * * * from all loss or damage not exceeding the sum of—Ten Thousand Dollars—which [they] shall sustain by reason of defects in or unmarketability of the title * * * described in Schedule A * * * excepting the estates, defects, objections, liens and encumbrances stated in Schedule B."

Schedule A listed the estate or interest as "an estate in fee simple." Schedule B contained various exceptions not here material. Sandler, as evidenced by defendant's receipt, paid defendant $125 for "examination and reporting title" and $50 for "title insurance premium for policy of $10,000."

On December 20, 1946 Sandler conveyed the entire tract of land to his wholly owned corporation, Richard Sandler Realty Co., Inc. (Sandler Realty Co.), as a capital contribution. The realty thus conveyed was at all times the sole asset of said corporation. On December 29, 1950 Sandler Realty Co. reconveyed the lands to Sandler pursuant to resolutions requiring the dissolution and liquidation of said corporation. On January 2, 1951 Sandler conveyed a one-third interest in the lands to each of his sons, plaintiffs herein. All these latter conveyances were evidenced by deeds of bargain and sale containing covenants against grantor's acts. Upon the death of Sandler on January 22, 1955 the remaining one-third interest passed

to the plaintiff sons, devisees under Sandler's will, as tenants in common.

Plaintiffs and their wives, on October 21, 1956, entered into an agreement to sell a portion of the lands so granted and devised to New Jersey Bell Telephone Company (Bell Telephone). Prior to the final settlement, however, it was discovered that there existed an adverse claim to the property. It is admitted that plaintiffs had, in fact, no title to the section agreed to be sold. The true owner asserted his hostile claim in such manner as to leave no doubt that he would enforce his title. The cause of this situation lay in the fact that the Webers' immediate grantor, prior to his conveyance to them, had conveyed said portion of the tract to a third party. It followed then that the Webers never obtained any title to the section in question, although it was included in their deed description to Sandler.

When Bell Telephone refused to pay the agreed purchase price and to accept a conveyance, plaintiffs conveyed an alternate parcel to the utility company. They advised defendant of the adverse claim and the rejection of title by Bell Telephone in accordance with the terms of the title policy. Liability was denied by defendant. Thereupon a complaint was filed by plaintiffs seeking damages in two counts, (1) under the terms of the policy as devisees of their father, the insured, and (2) for negligence in the examination of title.

Defendant answered, generally denying liability and asserting various affirmative defenses to the suit on the policy, all of which were bottomed upon a contention that the conveyance from Sandler to Sandler Realty Co. terminated its liability under the policy. As defense to the suit for negligent examination of title, defendant pleaded the statute of limitations.

At pretrial the parties stipulated that under either count of the complaint the limit of defendant's liability, if any, was $10,000. The pretrial order also reserved to plaintiffs the right to move for summary judgment and to defendant

the right to move for a dismissal of the complaint before trial. Defendant moved for a dismissal upon the ground that the complaint failed to state a claim upon which relief could be granted or, in the alternative, for summary judgment. Plaintiffs made a cross-motion for summary judgment on the count based upon the insurance policy. The court granted defendant's motion and denied plaintiffs' motion. *Sandler v. N. J. Realty Title Ins. Co.*, 66 *N. J. Super.* 597 (*Law Div.* 1961). Plaintiffs appealed to the Appellate Division but prior to argument this court certified the appeal on its own motion.

For the reasons hereinafter set forth, it is necessary to treat of the complaint only insofar as recovery is sought on the title insurance policy.

Defendant argues that title insurance is essentially a personal contract of indemnity given to protect only the insured against loss or damage. It reasons that under the express terms of the contract transfer of the insured estate by the insured automatically terminated liability. Thus, it contends, when Sandler conveyed to Sandler Realty Co. its liability ceased and could not be reinstated by the subsequent reconveyance to him absent its affirmative consent. In support of this position defendant refers to:

(1) Paragraphs 11 and 12 of the "Scope and Conditions * * *" of the policy, which read:

"11. This policy may be transferred to a mortgagee of the estate or interest insured and to an assignee of said mortgagee with the consent of the Company endorsed on this policy, provided, however, that no transfer shall alter the character or extent of the original liability of the Company under this policy. All liability of the Company under this policy, except for damages accrued, shall cease by the transfer thereof without such consent so endorsed. The liability of the Company to any collateral holder of this policy shall in no case exceed the amount of the pecuniary interest of said collateral holder in the premises insured by this policy. The transfer fee for assigning a policy shall be five dollars.

12. Whenever the party insured shall sell or mortgage any or all of the estate or interest insured by this policy and application is made for title insurance for the grantee or mortgagee of the party insured, then if the risk be again accepted by the Company, premium will be

charged at the reduced rate then current and in effect in the Company for reissue title insurance to the amount of this policy, and at the Company's regular premium rates then in effect on any amount in excess of the amount of this policy."

(2) an endorsement on the back of the policy, which reads:

"Policies are not assignable to grantees (purchasers) but only to mortgagees of insured or assignees of mortgagees as hereinbefore provided. Purchasers should protect themselves by obtaining Policy of title insurance at reduced re-issue rates as provided in this Policy. Corporate assignors must execute assignments by their authorized officers with corporate seal affixed."

and (3) Paragraph 2 of Schedule A of the policy, which reads:

"2. The deed or other means by which the estate or interest covered by this policy is vested in the party insured:
By Deed from Wilfred C. Weber and Louise M. Weber, his wife, to Maurice Sandler, dated July 24, 1946 and recorded July 25, 1946, in the Union County Register's Office, as Instrument Number 30282."

From the foregoing flows defendant's conclusion that plaintiffs, as devisees of Sandler, derived no rights under the policy.

Plaintiffs argue contrawise, that the policy does not expressly or impliedly provide for a final termination of liability upon a conveyance by the insured, but rather that the conveyance from Sandler to Sandler Realty Co. served merely to suspend defendant's liability during that period of time Sandler was out of title. They conclude that liability was revived upon the reconveyance to him and therefore inured to them as his devisees.

We are first confronted, therefore, with a construction of the policy.

A title insurance policy is a contract of indemnity under which the insurer for a valuable consideration agrees to indemnify the insured in a specified amount against loss through defects of title to, or liens or encumbrances upon

realty in which the insured has an interest. See *Ocean View Land Co. v. West Jersey Title Co.*, 71 *N. J. L.* 600, 605 (*E. & A.* 1905). As such, it is subject to the same rules of construction as are other insurance policies. 9 *Appleman, Insurance Law and Practice,* § 5201 (1943·), 29 *Am. Jur., Insurance,* § 245.

██ Basic to this problem of construction is a recognition of the principle that in such policies the phraseology must be liberally construed in favor of the insured and strictly construed against the insurer. *Hunt v. Hospital Service Plan of N. J.*, 33 *N. J.* 98 (1960); *Matits v. Nationwide Mutual Ins. Co.*, 33 *N. J.* 488 (1960).

In *Kievit v. Loyal Protect. Life Ins. Co.*, 34 *N. J.* 475 (1961), the court stated, at *p.* 482:

> "When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'"

Having these precepts in mind, we address ourselves to defendant's argument that certain sections of the policy exhibit an intent to terminate liability upon a conveyance by the insured.

██ Paragraph 11 of the "Scope and Conditions" concerns itself solely with *the transfer of the policy* to a mortgagee. It requires the assent of the insurer in order to validate such an assignment and it limits the liability of the insurer upon the granting of the consent and the accomplishment of the assignment. The clause has no application to a conveyance of the *fee* by the insured.

Paragraph 12 makes provision for a *reissuance of the policy* to a grantee or mortgagee of the insured at a reduced premium when the subject lands are conveyed or mortgaged.

Neither paragraph, expressly or impliedly, terminates the liability *to the insured* upon his conveyance of the fee. The sole limitation upon future liability occurs under paragraph

11 when the insured, by his own affirmative act, requests an assignment of the policy to a mortgagee. The liability is not then completely voided but rather is limited to "damages accrued" at the time of the grant of consent by the insurer to the assignment.

 Nor is any intention to terminate the policy upon a conveyance by the insured evidenced by the endorsement on the reverse side of the policy. Again, the reference there is to *subsequent grantees* who may desire title insurance. It is a warning that the policy is not assignable to grantees of the insured as well as an invitation to those grantees to obtain insurance at the reduced rates provided in paragraph 12.

 Paragraph 2 of Schedule A is merely descriptive of the mode of acquisition of title which the defendant insured and of the origin of the fee simple estate insured. It has no relationship to a termination of liability.

That the policy contemplates liability even after a termination of the interest of the insured is demonstrated by paragraph 2 (5) of the "Scope and Conditions," which reads:

"Under this policy of title insurance * * * no claim shall arise unless * * *
(5) the party insured shall have transferred the title insured by an instrument containing covenants in regard to title herein insured, or warranty thereof, and there has been a final judgment in a court of competent jurisdiction against the party insured on any of such covenants or warranty because of some lien or other incumbrance not excepted from this policy."

 Thus it is seen that the policy contains no provision, express or implied, which would finally terminate defendant's liability to Sandler upon a conveyance by and a subsequent reconveyance to him, where the claim is made for defects of title which existed at the time of his original acquisition of title and the issuance of the policy.

We come, therefore, to a consideration of whether, absent such a policy provision, the conveyance by Sandler to Sandler Realty Co. terminated or merely suspended defendant's

liability. At the outset it must be noted that there is no allegation that Sandler or his sons Richard and Lewis had any knowledge of the title defect prior to the Bell Telephone agreement nor that any of the conveyances was in fraud of defendant. We need not consider if the result would be different had they had such knowledge. For the purpose of the present case it is sufficient to invoke the doctrine which here follows.

■ Although there is no unanimity in other jurisdictions as to whether an insured must have an insurable interest both at the time of making the insurance contract involving indemnity against damage to property as well as at the time of actual loss, our courts have held that the parties are free to contract for indemnity if the interest existed at some time during the term of the risk and upon the occurrence of the loss. *Sun Insurance Office of London v. Merz*, 64 *N. J. L.* 301 (*E. & A.* 1900). See 4 *Appleman, supra,* § 2122; 29 *Am. Jur., Insurance,* § 825.

■ Where the insured had an insurable interest at the time of making the contract, a change of title to the property insured does not automatically void the policy, if at the time of loss the insured has such an insurable interest. Such a result is attained only by a policy provision to that effect.

In *Clinton v. Norfolk Mut. Fire Ins. Co.,* 176 *Mass.* 486, 57 *N. E.* 998, 50 *L. R. A.* 833 (*Sup. Jud. Ct.* 1900), the court said:

"The defense must, therefore, rest upon the clause as to alienation. Many of the earlier policies of fire insurance contained no condition against alienation. Inasmuch, however, as the contract of insurance is one of indemnity, and not a wager, it is manifest that where before the fire, the insured had parted with his entire interest in the property insured, he suffered no loss by its destruction, and needed no indemnity. A total transfer of his interest, therefore, defeated the policy. But any change short of a complete transfer of his entire interest did not have that effect. The general rule was and is that, in the absence of any provision to the contrary in the policy, any change in the insurable interest of the insured, whether by a complete sale of only a part of the property or a change in the title to a part or the whole of the property, does not avoid the

policy which has once attached, provided that at the time of the loss the insured has an insurable interest. It is necessary that there should be an insurable interest at the time of the contract and at the time of the loss; but if, at the time of the loss, the insured has parted with only a part of his interest, the policy is valid as to the part retained. Lazarus v. Insurance Co., 5 Pick. 76; Scanlon v. Insurance Co., 4 Biss. 511, Fed. Cas. No. 12,436; Cowan v. Insurance Co., 40 Iowa, 551; Stetson v. Insurance Co., 4 Mass. 330; Ayers v. Insurance Co., 17 Iowa, 176; Hitchcock v. Insurance Co., 26 N. Y. 68. And see, further, the cases cited in 13 Am. & Eng. Enc. Law (2d Ed.) p. 240, and notes. And even a total alienation does not avoid, but only suspends, the policy; so that if the insured regains his interest, or any part of it, and holds it at the time of the loss, he may recover."

See also 29A *Am. Jur., supra,* § 825.

Particularly should this reasoning apply to title insurance. Unlike fire or accident policies which are for fixed terms and which are such as contemplate a reappraisal of the risk on the part of the insurer at the end of the term, title policies by nature are without time limit and are not subject to reassessment of the risk for they insure solely on the basis of what is already irretrievably past. It follows, then, that the risk cannot be increased by a conveyance from and a subsequent reconveyance to the insured. There being no increase in risk and it being undisputed that absent the mesne conveyance the insurance coverage would remain in full force and effect, a reimposition of liability works no injustice to the insurer.

There appears, therefore, no reason why, under the circumstances here present, the conveyance by Sandler to Sandler Realty Co. should finally terminate defendant's liability. As above noted, the policy contains no such provision. The conveyance did not increase defendant's risk nor change the nature of its liability. The reconveyance to him served merely to re-establish the status which existed at the inception of the insurance contract. The policy was, at most, only suspended during the time that Sandler Realty Co. held title and was revived upon the reconveyance to him. Thereafter, under its terms, the in-

demnification inured to the benefit of the plaintiffs as devisees of a one-third interest in the tract.

Defendant cites *Pollock v. Home Insurance Co. of N. Y.,* 121 *N. J. L.* 52 *(E. & A.* 1938); *Vozne v. Springfield Fire, &c., Insurance Co.,* 115 *N. J. L.* 449 *(E. & A.* 1935); *Bradley v. Atlantic Guaranty & Title Ins. Co.,* 98 *N. J. L.* 34 *(Sup. Ct.* 1922), affirmed 98 *N. J. L.* 741 *(E. & A.* 1923); *Bess Holding Corp. v. Importers, &c., N. Y.,* 12 *N. J. Misc.* 119, 169 *A.* 536 *(Sup. Ct.* 1933); *Weinburger v. Agricultural Ins. Co.,* 80 *N. J. L.* 202 *(Sup. Ct.* 1910); *Schoenman v. Bloom,* 106 *N. J. Eq.* 421 *(Ch.* 1930), as authority for the rejection of the theory of "suspension and revival" in this State. These cases are inapposite. In each there was present a breach of an express policy provision. *Vozne, Pollock* and *Bess Holding Corp.* concerned express provisions which rendered the policies void for breach of a specified warranty or condition. *Bradley* and *Schoenman* involved the failure of the insured to comply with express policy provision for the giving of notice of the assignment of a mortgage by the originally insured mortgagee. *Weinburger* dealt with an assignment of a mortgage by the insured mortgagee without an assignment of the policy until after the insured had divested himself of title to the mortgage and after the property had been damaged. We are not here called upon to consider the doctrine of "suspension and revival" involving an action of the insured which allegedly breaches a warranty or condition of the policy.

Defendant further argues that it would be inequitable to invoke the doctrine of "suspension and revival" for the reason that the conveyance by Sandler to Sandler Realty Co. and the subsequent conveyances were by bargain and sale deed. This, it says, destroyed any remedy Sandler might have had against the Webers by reason of the warranties contained in their deed to him and rendered defendant's right of subrogation under paragraph 10 of "Scope and Conditions" a nullity. Paragraph 10 reads, in part:

"Whenever the Company shall have settled a claim under this policy, it shall be subrogated to, and shall have, all the rights and remedies which the party insured would have had against any other person or property in respect to such claim, had this policy not been made, including the right to use the name of the party insured for the recovery or defense thereof; and the party insured shall transfer or cause to be transferred all such rights to said Company. If the payment does not cover the loss of the party insured, the Company shall be subrogated to such rights, in the proportion which said payment bears to the amount of said loss; and the party insured warrants that such right of subrogation shall vest the estate or interest guaranteed in the Company unaffected by any act of the party insured."

As already noted, the conveyance by the Webers to Sandler was by warranty deed containing covenants of (1) seizin, (2) right to convey, (3) freedom from encumbrances, and (4) warranty.

Covenants of seizin, right to convey, and freedom from encumbrances are personal covenants operative *in praesenti* and hence inoperative in behalf of a grantee of a covenantee. A covenant of warranty, on the other hand, operates *in futuro* and runs with the land as an incident of inheritance and hence is operative in behalf of a grantee of a covenantee and each successive transferee thereafter. It is not essential to the succession of a subsequent owner that the intermediate conveyances contain any covenants whatever. *Kellog, ex'r of Kellog v. Platt, ex'r of Davis,* 33 *N. J. L.* 328 (*Sup. Ct.* 1869); *Carter v. Executors of Denman,* 23 *N. J. L.* 260 (*Sup. Ct.* 1852); *Atlantic Seaboard Co. v. Borough of Seaside Park,* 36 *N. J. Super.* 142 (*App. Div.* 1955), certif. denied 19 *N. J.* 619 (1955); *Greenwood v. Robbins,* 108 *N. J. Eq.* 122 (*Ch.* 1931); *Kuntzman v. Smith,* 77 *N. J. Eq.* 30 (*Ch.* 1910); *7 Thompson on Real Property,* §§ 3783, 3784 (1940).

Even though it be conceded that the covenants of seizin, right to convey and against encumbrances were extinguished by Sandler's conveyance to Sandler Realty Co., the covenant of warranty continued in unabated force. The only covenant here important and lost was that of seizin. It must neces-

sarily follow that defendant, as subrogee, was deprived of its remedy against the Webers for breach of the covenant of seizin. But this did not destroy defendant's right to recover under the covenant of warranty.

A covenant of seizin is breached if a good title in fee simple absolute, with right to possession, is not in the grantor when the deed is delivered. To succeed in a suit for such breach, the covenantee is required to prove only a defect in the covenantor's title. A covenant of warranty, on the other hand, is breached only when there is an eviction, actual or constructive, under a paramount title. *Douglass v. Lewis,* 131 *U. S.* 75, 9 *S. Ct.* 634, 33 *L. Ed.* 53 (1889); *Smith v. Smith,* 90 *N. J. L.* 282 (*E. & A.* 1917); *Fortescue v. Columbia Real Estate Co.,* 75 *N. J. L.* 272 (*Sup. Ct.* 1907); *Kellog, ex'r of Kellog v. Platt, ex'r of Davis, supra; Carter v. Executors of Denman, supra; Kuntzman v. Smith, supra;* 7 *Thompson on Real Property, supra,* §§ 3687, 3752.

In *Kellog, supra,* the court stated, at *p.* 334:

"It must not be supposed, however, that the existence of paramount title, and the acquisition of it by the covenantee by purchase, of his mere volition, will amount to a constructive eviction sufficient to support an action on the covenant of warranty. To adopt such a principle would be to confound a covenant of warranty with covenants for seizin or against encumbrances, and to disregard the distinction which gives to the former its negotiable quality as an incident of the inheritance [*sic*] and maintains it as a covenant unbroken, and therefore excludes it from the rule of the common law, that a *chose in action* is incapable of assignment. To preserve the quality of transmissibility in covenants of warranty, the obligation must be prospective to be incurred by some act done under the adverse title hostile to the title under which the covenantee holds, either by entry or the bringing of the suit—or at least by its assertion in some way, under such circumstances as shall induce a well founded belief that it will be enforced, under the menace of which the covenantee honestly yields, and he may be said to have suffered an involuntary loss of the possession under his defective title. When a paramount title is asserted by such acts, or under the circumstances mentioned, a constructive eviction takes place, and the covenantee may abandon the possession, or purchase in the adverse title, and retain his remedy upon the covenant of warranty."

See also *Camden Co. Welfare Board v. Federal Dept. Ins. Co.*, 1 *N. J. Super.* 532 (*Ch. Div.* 1948). Under the admitted facts here present, a paramount title has been asserted in such a manner as to leave no doubt that it will be enforced. This constitutes a constructive eviction and so a right of action accrues under the covenant of warranty. Additionally, the damages here recoverable for a breach of either covenant are identical. 7 *Thompson on Real Property, supra,* §§ 3797, 3821. In practical effect, defendant's right of recourse against the Webers was not affected. Since defendant was not deprived of its right of action as a subrogee under the covenant of warranty, it lost nothing. There is, therefore, no inequity in applying the doctrine of suspension and revival.

Reversed and remanded for entry of judgment in the amount of $10,000.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.