CARAVAN PRODUCTS COMPANY, INC., A NEW YORK CORPORATION, PLAINTIFF-APPELLANT, v. ROY S. RITCHIE, *ET AL.*, DEFENDANTS, AND CHELSEA TITLE AND GUARANTY COMPANY, DEFENDANT-RESPONDENT.

Argued October 21, 1969—Decided December 2, 1969.

Mr. *John J. Baldino* argued the cause for the appellant (*Messrs. Calissi, Gelman, Cuccio & Klinger,* attorneys).

Mr. *John R. Weigel* argued the cause for the respondent (*Messrs. Lafferty, Rowe, McMahon & McKeon,* attorneys).

The opinion of the Court was delivered by

HANEMAN, J. Plaintiff contracted for the purchase of certain lands in the Borough of Totowa. The agreement of purchase contained a covenant against encumbrances but was silent on the specific subject of unconfirmed municipal special assessments. Subsequent to the execution of the above referred to agreement, plaintiff applied to Lawyers-Clinton Title Insurance Company of New Jersey (predecessor to defendant Chelsea Title and Guaranty Company) for title insurance. Pursuant to said application, Lawyers-Clinton issued a document entitled "Preliminary Report of Title" which reads in part as follows:

"Lawyers-Clinton Title Insurance Company of New Jersey hereby certifies to the applicant for guaranty under above application and

under the provisions thereof that it has examined the title to land * * * and finds title in [the seller] * * * subject only to the following *estates, liens, defects and questions* which, together with any others which may be found in continuing the search, are *to be excepted in the guaranty* which it will issue in the above amount when the title is properly closed and satisfactorily reported, unless documentary evidence of their removal be submitted which shall be satisfactory to this company: (Emphasis added)

|  |  |  |
|---|---|---|
|  | 1. | Statutory and Municipal requirements relating to land and buildings. |
|  | 2. | See Item No. 11 following. [Not here relevant] |
|  | 3. | Liability, if any, to Mechanics' Liens for work done or materials supplied, if any. |
|  | 4. | Rights of tenants and occupants, if any. |
| Mortgages | 5. | NONE |
| Easements | 6. | NONE OF RECORD |
| Restrictions | 7. | NONE OF RECORD |
| Tax Search | 8. | ORDERED Such municipal liens as may attach subsequent to date of aforesaid tax search. |
| Unconfirmed Assessment Search | 9. | ORDERED |
| Inspection and Survey | 10. | Such objection to title, if any, as may result from facts which a survey and inspection would disclose, to be advised." |

On the day of and prior to final settlement and closing, counsel for plaintiff placed a telephone call to an agent of Lawyers-Clinton seeking information as to the existence of any unconfirmed municipal assessments. The response was that the title search was "all clear," admittedly intended to indicate that no unconfirmed municipal assessments existed against the property on that date. The balance of consideration was then paid and title passed on August 10, 1964. Unbeknownst to plaintiff there then actually existed an unconfirmed municipal assessment against the premises in the amount of $6,900 which was confirmed by the Borough in December 1966. The Lawyers-Clinton issued its policy some time subsequtnt to October 8, 1964, although the policy is dated August 12, 1964. Said policy reads in part as follows:

"Note: Unconfirmed Assessment Search No. 1215 dated October 8, 1964 discloses: — Various ordinances adopted for sewer."

Plaintiff did not read the policy until after it became aware of the assessment. It thereupon brought suit against the seller and the Chelsea Title and Guaranty Company (successor to Lawyers-Clinton) in separate counts. The seller paid the plaintiff $2,500 in settlement of the claim against them. After trial, judgment was entered against Chelsea Title and Guaranty Company for the balance of $4,400. On appeal to the Appellate Division, the court held that the title company was properly held liable for "negligence in reporting to plaintiff at the closing that there were no unconfirmed assessments" but reversed on the ground that the plaintiff's damages, measured in negligence, had been satisfied by the seller's payment. Plaintiff's petition for certification to this Court was granted. 54 *N. J.* 110 (1969).

We find that the Appellate Division was in error. Insofar as the subject matter is covered by the policy of insurance, the liability to plaintiff is contractual and does not depend upon negligence. Hence we are not concerned with the liability of a title examiner. In *Sandler v. N. J. Realty Title Ins. Co.,* 36 *N. J.* 471 (1962), this Court said at *p.* 478:

"A title insurance policy is a contract of indemnity under which the insurer for a valuable consideration agrees to indemnify the insured in a specified amount against loss through defects of title to, or liens or encumbrances upon realty in which the insured has an interest. See *Ocean View Land Co. v. West Jersey Title Co.,* 71 *N. J. L.* 600, 605 (*E. & A.* 1905). As such, it is subject to the same rules of construction as are other insurance policies. 9 *Appleman, Insurance Law and Practice,* § 5201 (1943), 29 *Am. Jur., Insurance,* § 245.

Basic to this problem of construction is a recognition of the principle that in such policies the phraseology must be liberally construed in favor of the insured and strictly construed against the insurer. *Hunt v. Hospital Service Plan of N. J.,* 33 *N. J.* 98 (1960) ; *Matits v. Nationwide Mutual Ins. Co.,* 33 *N. J.* 488 (1960).

In *Kievit v. Loyal Protect. Life Ins. Co.,* 34 *N. J.* 475 (1961), the court stated, at *p.* 482:

'When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies

should be construed liberally in their favor to the end that coverage is afforded "to the full extent that any fair interpretation will allow." ' "

The above precepts act as a guide in ascertaining the intentions of the parties. The designation "Preliminary Report of Title" on the instrument delivered to plaintiff is a misnomer. That document is more than what that designation would imply — a mere report, abstract or search of title. It is a "binder," *i. e.,* a binding receipt affording coverage pending the agreed issuance of a policy under which the title company agrees to "guaranty" the title subject only to specifically noted and listed "estates, liens, defects and questions." See *Allen v. Metropolitan Life Insurance Co.,* 44 *N. J.* 294 (1965). The guaranty is not limited to insurance against outstanding "estates, liens and defects." The agreement extends as well to insurance against the generalized category of "questions." On the face of the binder and included in the list of items to be excepted from the guaranty, as "estates, liens, defects and questions," is the printed legend "unconfirmed assessment search" with a blank space for the insertion of any information disclosed by such a search. The plain intention to be gathered therefrom is that the policy will insure against the existence of any such unconfirmed assessment unless otherwise noted in the blank space. By expressly advising, as a supplement to the "Preliminary Report," that there were no unconfirmed municipal assessments, the defendant agreed that no unconfirmed assessments would be excepted from its guaranty. Accordingly, plaintiff was damaged to the extent of the assessment and is entitled to the $4,400 which it sought to recover.

Reversed and remanded for entry of judgment in said amount.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—NONE.