**UNITED STATES of America, Plaintiff,**

v.

**CITY OF FLINT, COUNTY OF GENESEE, STATE OF MICHIGAN, et al., Defendants.**

United States District Court,
E. D. Michigan, S. D.
July 20, 1972.

---

Robert A. Rosenberg, Chief, Civil Div., U. S. Atty., for plaintiff.

Richard R. Roesch, Asst. Atty. Gen., State of Mich., Herbert W. Hutchins, Asst. City Atty., City of Flint, John Kregg, Asst. Corp. Counsel, County of Genessee, Warren F. Krapohl, Flint, Mich., for defendants.

## OPINION

TALBOT SMITH, District Judge.

This case is before the Court upon stipulations for summary judgment to determine if certain property purchased by the Federal Government is encumbered with tax liabilities hereinafter described, and, if so, who is liable for payment of such taxes. The Complaint is brought under 28 U.S.C. § 1345, to enjoin and set aside the sale of certain property and the granting of tax deeds by defendants, and under 28 U.S.C. § 2201, for a declaratory judgment.

Between the period of April, 1967 and October, 1967, the United States acquired, by purchase, several parcels of land in the City of Flint, County of Genesee. The property was to be used by the Social Security Administration. During the process of buying the property the Burton Abstract & Title Company (hereinafter "Burton") issued title policies to the United States.

On Tax day, December 31, 1966, the City of Flint, and County of Genesee made determinations as to the value of these parcels, such becoming the basis for the *ad valorem* tax assessment. These taxes subsequently became due and payable on July 1, 1967, for the city taxes, and December 1, 1967, for the county taxes.

These taxes were not paid and remain unpaid at the time of this writing. As a result of the taxes becoming delinquent, the property was put up for tax sale on May 5, 1970, pursuant to M.C.L. A. § 211.60 et seq. The United States has instituted this suit to vacate the tax sales and to permanently enjoin any future tax sale; it prays for a declaratory judgment voiding any and all tax liens against the property, and in the alternative, a declaratory judgment stating that Burton is liable, under its title policies, for the satisfaction of such liability.

It is to be noted that subsequent to the filing of this suit, all parties agreed and stipulated that the defendants will be permanently enjoined from selling, conducting a sale, executing any lien or

otherwise engaging in foreclosure procedures regarding the property described in this action. Such injunction has been entered.

Therefore, it remains for this Court to determine whether the property is encumbered with a property tax liability, and, if so, the propriety of voiding these tax liens. Additionally, should such taxes be valid, whether Burton is liable, under its title policies, for the satisfaction thereof.

## I

As to whether the property was encumbered by any tax liability when purchased, our decision in United States v. State of Michigan, et al., 346 F.Supp. 1277 (D.Mich., Complaint filed May 4, 1971) controls. In that case, the facts are almost parallel with those of the case at bar. We therein examined the process of buying and selling real estate and its relation to the Michigan General Property Tax Statutes. It was held that subsequent to the tax day, December 31, the property acquired a known taxable status. The tax liability becomes due and payable at a later date and, as such, must be satisfied by any succeeding owner in order to obtain a cloud-free title. Such liens being consistent with Michigan property tax laws, the relief requested by the United States as to the voiding of any and all liens was denied.

■ Herein, we hold likewise. The property purchased by the United States on the various dates had a known taxable status, and, as such, was encumbered with a lien status for the city and county taxes.[1]

## II

The remaining issue is whether the insured, the United States, has sustained a loss or damage by reason of the tax liens, and if so, whether Burton has afforded coverage under their policies for such loss or damage.

■ A defect in ownership or title is said to exist when the aggregate of rights, privileges, and powers known as ownership is subject to the claims of others.[2] These claims may restrict the use and/or alienation of the property and as a corollary may reduce its market value.

Such is the situation in the case at bar. The parcels of land purchased by the United States, the titles to which were insured by Burton, are subject to the claims of the taxing authorities of the State of Michigan and County of Genesee. While the possessory interest of the United States cannot be disturbed, other incidents of ownership are seriously affected by these claims. The merchantability of the land is impaired by reason of the clouded title. In the event of a subsequent sale by the United States, the amount realized must be adjusted in order to satisfy the tax liens that existed when the property was purchased.[3] But whether a subsequent sale occurs, or not, is not determinative of whether the insured suffered loss or damage under the title policy. The policy obligates Burton to pay to the United States for losses or damages in accordance with its terms.

In view of the vigorous argument of Burton, ably presented, against liability on their policies, a brief look at fundamentals would seem in order.

■ A title insurance policy is a contract under which the insurer, for a valuable consideration, agrees to indemnify the insured against loss through defects of title, or liens or encumbrances upon

---

1. It is asserted by the State, and not denied by any party hereto, that the properties acquired on July 21, 1967, and August 17, 1967, were subject to a perfected lien for city taxes. Under our view as to the legal result of the inchoate lien, it is unnecessary that we pursue the distinction made as to these two properties. These tax liens will not be voided as prayed for by the United States, United States v. State of Michigan, et al., *supra.*

2. Title Insurance: Duty To Search, 71 Yale L.J. 1161 (1962).

3. See, Federal Immunity From State Tax, 40 Mich.L.Rev. 290 (1941).

the realty in which the insured has an interest. Sandler v. New Jersey Realty Title Ins. Co., 36 N.J. 471, 178 A.2d 1 (1961).

The sole object of title insurance is to cover possibilities of loss through defects that may cloud the title. It is not mere guesswork, nor is it a wager. It is designed to be predicated upon careful examination of the muniments of title, an exhaustive study of the applicable law and the exercise of expert contract draftmanship. Some defects will be disclosed by a search of the public transfer records; others will be disclosed only by a physical examination or a survey of the property itself. Often the existence of title defects will depend upon legal doctrines and judicial interpretations of various applicable statutes. Since the average purchaser has neither the skill nor the means to discover or protect himself against the myriad of defects, he must rely upon an institution holding itself out as a title insurer.

Such is the case at bar. Here, we have a situation where the purchaser of land, worth over $76,000, attempts to protect its investment by purchasing title insurance. The policy seems to be a standard form contract prepared by the insurer, Burton, the purpose of which is to provide coverage for any defect in title that may have existed prior to the purchase, unless specifically excluded.

██ The vendor of such insurance may, of course, exclude risks it is unwilling to assume. The parties to the contract may (considerations of public policy, if any, aside) freely define the risks assumed as well as those excluded. And in considering such exclusions, we bear in mind that title policies are subject to the same rules of construction as are other insurance policies. 9 Appleman, Insurance Law and Practice, § 5201. Basic, of course, to this problem of construction is a recognition of the principle that in such policies the phraseology must be liberally construed in favor of the insured and strictly construed against the insurer. The courts are without authority to re-write such contracts, their function being merely to give effect to the intention of the parties as disclosed by the contract, giving the words thereof their commonly accepted meaning.

Burton has filed with this Court, accompanying its Memorandum of Law, four instruments entitled "Owner's Title Insurance Policy". In analyzing these documents so submitted in support of its Memorandum, we note that two of them insure the United States "against all loss or damage which the insured shall sustain" by reason of " . . . any defect in or lien or encumbrance on the title to the estate or interest covered hereby in the land described or referred to in Schedule A, existing at the date hereof, not shown or referred to in Schedule B or excluded from coverage by the General Exceptions . . . ."

Schedule B provides as follows:

"SCHEDULE 'B'

"This policy does not insure against loss or damage by reason of the following:

1. Current and delinquent taxes and assessments as follows:"

[None listed by the insurer]

The remaining two policies similarly insure the United States "against all loss or damage which the party guaranteed (insured) shall sustain by reason of defects in the title of the said UNITED STATES OF AMERICA to the real estate or the interest therein described in schedule "A" or by reason of liens or encumbrances affecting the title, at the date hereof, excepting only such defects, liens, encumbrances, and other matters as are set forth in Schedule "B" below."

"SCHEDULE 'B'

"Defects, liens, encumbrances, and other matters excepted from this policy and against which this Company does NOT guarantee (insure). Special exceptions:"

[Again, none are listed by the insurer]

At this point it seems clear that if the insurer desired to exclude any type of tax lien for current or delinquent taxes and assessments, such would have been listed at this point. Burton argues that it was unaware of the inchoate lien, pointing out that "Evidently the Treasurers of the respective taxing units were not aware of this alleged 'inchoate' lien; no wonder the purchaser and the title company were not." The duty of the insurer, however, is to remain aware of the developments of the law in the area it purports to cover. The doctrine of United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941), holding the United States to the same standard of fiscal responsibility in dealing with the State authorities as a private citizen thereof, had been on the books for over a quarter of a century at the time of the issuance of this policy, and the words of such Court, "It is familiar practice for grantees who take title in such circumstances to see that provision is made for the payment of taxes and the Government could easily have protected itself in like manner" (p. 282, 61 S.Ct. p. 1014) would seem to have a peculiar and unique applicability to the tax situation then confronting the parties. As we held in United States v. State of Michigan, et al., *supra,* after analyzing the Michigan General Property Tax statutes:

> "The statutory process of assessing and determining the real property tax liability constitutes due notice as of the tax day and as such, successive vendees are put on notice of the tax liability."

Since no exclusionary language is present, the Court will not read such into the contract. Lawyers Title Ins. Corp. v. Research Loan and Investment Corp., 361 F.2d 764 (8th Cir. 1966). Accordingly, the obligation of Burton for the satisfaction of the tax liability has been assumed by it in the contract of insurance issued.

The matter of injunctive relief has been heretofore considered and such relief granted.

As to the declaration of rights requested, we hold that the Burton Abstract and Title Company, under the terms of its policies, has a duty to extinguish all liens for 1967 property taxes, inchoate and perfected.

A suitable order may be presented.