# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 14, 2015 Session

## THE PEOPLES BANK v. CONRAD MARK TROUTMAN ET AL.

**Appeal from the Circuit Court for Campbell County**
**No. 15102     Don R. Ash, Senior Judge**

_____

**No. E2014-01150-COA-R3-CV – Filed July 27, 2015**

_____

This action involves a commercial loan in the amount of $765,000.00. Prior to closing on the loan, the lender received a commitment for title insurance requiring that a prior lien on title to the real property as collateral be released or subordinated. The lender went forward with the closing after receiving assurance from the title insurance company's agent and attorney that the prior lien had been subordinated. Thereafter, the title insurance company issued a policy that excepted the prior lien from coverage. Following default by the borrowers, the prior lienholder foreclosed on the property, causing the lender to file the present action against the title insurance company and the attorney who prepared the commitment for title insurance, as well as the attorney's law firm. The title insurance company and the attorney, together with his law firm, filed separate motions for summary judgment. The trial court denied the motion filed by the attorney and his firm. The lender subsequently took a voluntary nonsuit of its claims against those parties. The trial court granted summary judgment in favor of the title insurance company. The attorney, his firm, and the lender have appealed. Discerning no reversible error, we affirm the trial court's grant of summary judgment to the title insurance company. We dismiss the joint appeal filed by the attorney and his law firm as not justiciable.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Gregory Brown and Lindsey E. Lyle, Knoxville, Tennessee, for the appellants, Conrad Mark Troutman and Troutman & Troutman, P.C.

Ronald C. Koksal and T. Michael Craig-Grubbs, Knoxville, Tennessee, for the appellee, The Peoples Bank.

Janet Strevel Hayes, Knoxville, Tennessee, and Mary Beth Haltom, Nashville, Tennessee, for the appellee, Old Republic National Title Insurance Company.

## OPINION

### I. Factual and Procedural Background[1]

The plaintiff, The Peoples Bank ("the Bank"), extended a loan in the amount of $765,000.00 to Norris Marina Group, LLC ("Norris"), in August 2008. Certain lots of real property owned by Norris or its principals were utilized as collateral to secure repayment of the loan. Prior to the closing of this loan, principals of Norris asked their attorney, Conrad Mark Troutman of Troutman & Troutman, P.C., as an agent of Old Republic National Title Insurance Company ("Old Republic"), to procure title insurance. Mr. Troutman was also contacted by Traci Todd, a Senior Vice President and Director of Lending for the Bank, and asked to prepare certain legal documents in connection with the loan's closing, including a "full title insurance policy," a settlement statement, and a deed of trust. Via affidavit, Ms. Todd explained in part that a full title insurance policy was a condition of the loan to ensure that the bank maintained a valid first lien on the title to the collateral.

Mr. Troutman subsequently prepared a commitment for title insurance on behalf of Old Republic and provided it to Ms. Todd. The commitment for title insurance specifically identified the lien of a deed of trust existing in favor of Tennessee Investment Properties, LLC ("TIP"), which secured repayment of a promissory note in the amount of $4,500,000.00. The commitment document also provided that the TIP lien would have to be released or subordinated before the Bank's lien would hold a first lien position. Mr. Troutman asserts that he was never requested to prepare a release or subordination document with regard to the TIP lien. He instead expected that this task would be accomplished by someone else. According to Ms. Todd, she asked Mr. Troutman about the TIP lien before the closing and was told that a valid subordination agreement existed. Ms. Todd related that she relied upon Mr. Troutman's representation in electing to proceed with the loan closing. As the Bank points out, Mr. Troutman explained in his deposition that he merely assumed a subordination agreement existed because he was told

---

[1] This Court must view the facts in the record in the light most favorable to the Bank in order to sustain the grant of summary judgment to Old Republic. *See Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83 (Tenn. 2000). We make the following recitation with that in mind.

by a principal of Norris prior to the loan closing that such a subordination agreement existed or was forthcoming.

Following the closing, Ms. Todd requested from Mr. Troutman a final certificate of title, demonstrating the Bank's lien to be in first position. Mr. Troutman testified that he forwarded this request to a title abstractor in his office, who prepared the requested document for his signature. The final certificate of title signed by Mr. Troutman on February 9, 2009, states as follows:

> This is to certify that we are of the opinion that the exceptions with reference to the title in the within report have been corrected sufficiently to make the title merchantable. I find that of Deed of Trust from NORRIS MARINA GROUP, LLC to RAYMOND E. LACY, Trustee, dated August 21, 2008 to secure THE PEOPLES BANK in the amount of $765,000.00, is of recorded in Deed Book 1486, Page 1238 in the Register's Office of Anderson County, Tennessee, having been recorded on August 21, 2008, at 8:30 a.m., and it is my opinion that this Deed of Trust constitutes a valid first lien upon the subject property.

In his deposition testimony, Mr. Troutman admitted that this final certificate of title was prepared without verification of the existence of a subordination agreement regarding the TIP lien. He also acknowledged that such lack of verification constituted a deviation from the standard of care by his office.

Three years after the loan closing, Norris defaulted in its payment of the loan. TIP subsequently foreclosed on its deed of trust. Upon discovering that it did not maintain a valid first lien on the title to the property, the Bank sued Mr. Troutman and his firm ("the Troutman Defendants") for legal malpractice on November 30, 2011. The Bank later filed a first amended complaint on February 14, 2012, and a second amended complaint on September 25, 2012. In the second amended complaint, the Bank named Old Republic as an additional defendant and for the first time asserted a breach of contract claim.

The Troutman Defendants and Old Republic respectively filed motions for summary judgment with regard to the Bank's claims. The trial court denied the Troutman Defendants' motion for summary judgment by order entered May 5, 2014. On May 14, 2014, the Bank filed a Notice of Voluntary Dismissal as to the Troutman Defendants. The court thereafter granted Old Republic's motion for summary judgment on May 19, 2014, concomitantly entering an order nonsuiting the Bank's claims against the Troutman Defendants. The Troutman Defendants filed a timely notice of appeal concerning the denial of their motion for summary judgment. The Bank also filed a

timely notice of appeal regarding the grant of summary judgment in favor of Old Republic.

## II.  Issues Presented

The Troutman Defendants present the following issues for our review, which we have restated slightly:

1. Whether entry of an order of voluntary dismissal constitutes a final judgment permitting the Troutman Defendants to seek an appeal as of right regarding the denial of their motion for summary judgment.

2. Whether the trial court erred in denying the Troutman Defendants' motion for summary judgment when the Bank failed to identify an expert witness to address the professional standard of care.

3. Whether the trial court erred in granting the Bank's motion to file its third amended complaint.

The Bank raises the following additional issues:

4. Whether the trial court erred in finding that there were no disputed issues of material fact and that Old Republic was entitled to a judgment as a matter of law.

5. Whether the trial court complied with Tennessee Rule of Civil Procedure 56.04 when granting summary judgment to Old Republic.

## III.  Standard of Review

For actions initiated on or after July 1, 2011, such as the one at bar, the standard of review for summary judgment delineated in Tennessee Code Annotated § 20-16-101 (Supp. 2014) applies.  *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011).  The statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

4

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.[2] The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). "A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Dick Broad. Co.*, 395 S.W.3d at 671 (citing Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has recently instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Effect of Voluntary Nonsuit

The Troutman Defendants assert that this Court should consider their appeal because the order granting a voluntary nonsuit of the Bank's claims against them constitutes a final judgment from which an appeal as of right would lie. Conversely, the Bank contends that precedent established by this Court prohibits an appeal from a

---

[2] As this Court has elucidated:

> Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan* [*v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)], which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

*Walker v. Bradley County Gov't*, No. E2013-01053-COA-R3-CV, 2014 WL 1493193 at *3 n.3 (Tenn. Ct. App. Apr. 15, 2014). *See also Sykes*, 343 S.W.3d at 25 n.2.

voluntary nonsuit taken after the denial of a motion for summary judgment. We agree with the Bank on this issue.

In *Martin v. Washmaster Auto Ctr., Inc.*, No. 01-A-01-9305-CV-00224, 1993 WL 241315 at *2 (Tenn. Ct. App. July 2, 1993), this Court considered a factual situation similar to the case at bar. The plaintiff therein had voluntarily nonsuited her claims against the defendant following the trial court's denial of the defendant's motion for summary judgment. Regarding the action's procedural posture, this Court stated, *inter alia*:

> Defendants ordinarily cannot appeal from the denial of their motion for summary judgment. The denial of a summary judgment before trial is an interlocutory decision that does not satisfy Tenn. R. App. P. 3(a)'s finality requirement. *Williamson County Broadcasting Co. v. Williamson County Bd. Of Educ.*, 549 S.W.2d 371, 373 (Tenn. 1977); *In re Estate of McCord*, 661 S.W.2d 890, 891 (Tenn. Ct. App. 1983). Similarly, the denial of a summary judgment because of genuine factual disputes is not appealable after a trial on the merits. *Hobson v. First State Bank*, 777 S.W.2d 24, 32 (Tenn. Ct. App. 1989); *Tate v. County of Monroe*, 578 S.W.2d 642, 644 (Tenn. Ct. App. 1978).
>
> Taking a voluntary nonsuit does not render the denial of a summary judgment any more suitable for appellate review. No present controversy exists after the plaintiff takes a nonsuit. The lawsuit is concluded and can only be resurrected if and when the plaintiff recommences the action. The plaintiff's refiling the suit is a contingent event that may not occur. Thus, determining whether the defendant is entitled to a summary judgment after the underlying suit has been dismissed without prejudice would be unnecessary and premature.

*Martin*, 1993 WL 241315 at *2. This Court has applied a similar analysis in factually analogous cases as well. *See, e.g., Oliver v. Hydro-Vac Servs. Inc.*, 873 S.W.2d 694, 696 (Tenn. Ct. App. 1993); *Payne v. Savell*, No. 03A01-9708-CV-00352, 1998 WL 46454 at *1 (Tenn. Ct. App. Feb. 5, 1998). We therefore conclude that the Troutman Defendants cannot appeal the denial of their summary judgment motion following a voluntary nonsuit of the Bank's claims against them.

The Troutman Defendants contend that the present action should be controlled by *Panzer v. King*, 743 S.W.2d 612 (Tenn. 1988) (abrogated by *Lacy v. Cox*, 152 S.W.3d 480 (Tenn. 2004)), wherein our Supreme Court ruled that a voluntary nonsuit could not be taken by the plaintiff if such action would deprive the defendant of a vested right of

6

review. In *Panzer*, the plaintiff requested a nonsuit after the trial court granted the plaintiff's motion for new trial following a "low" jury verdict. *Id.* at 613. The Supreme Court concluded that the defendant had a vested right in appellate review of the trial court's action of granting a new trial. *Id.* at 613. *Panzer* did not involve the trial court's denial of a motion for summary judgment.

According to the Troutman Defendants, notwithstanding entry of the nonsuit, they maintained a vested right to: (1) receive a grant of summary judgment due to the Bank's lack of expert testimony regarding the standard of care or (2) seek interlocutory or extraordinary appeal of the trial court's denial of their motion for summary judgment. We disagree. Regarding such a contention in a similar case, this Court rejected an argument regarding appellate review of the denial of summary judgment, elucidating:

> Declining to review the denial of the [defendant] car wash's motion for summary judgment at this time will not prevent the car wash from filing the same motion should the plaintiff recommence her lawsuit. Likewise, it will not prevent the car wash from seeking interlocutory appellate review of the trial court's decision should its motion be denied again. Thus, declining to review the denial of the motion for summary judgment at this juncture will not deprive the car wash of an eventual opportunity to seek appellate review of the denial of its motion.

*Martin*, 1993 WL 241315 at *2. This Court specifically explained: "The fact that the car wash will be able to seek appellate review should its summary judgment motion be denied again differentiates this case from *Panzer v. King*, 743 S.W.2d 612 (Tenn. 1988)." *See id.* at *2 n.3. Based on the above precedent, we conclude that the Troutman Defendants cannot in the instant appeal seek review regarding the denial of their summary judgment motion in light of the Bank's nonsuit of its claims against them.

V. Third Amended Complaint

Following the filing of both motions for summary judgment, the Bank sought permission to file a third amended complaint. In the amended pleading, the Bank added an allegation that the Troutman Defendants were liable for negligent misrepresentation by a professional person. The trial court granted leave to file this amendment.

The Troutman Defendants assert that the trial court improperly granted permission for the Bank to file its third amended complaint. Based on the Bank's subsequent voluntary nonsuit of its claims against the Troutman Defendants, however, this issue is clearly not justiciable. As this Court has previously explained:

7

Justiciability is a judge-made doctrine developed to determine when courts should hear a case. It involves both the court's power to consider a dispute and the wisdom of their doing so. The central concepts of the doctrine have been separated into seven specific categories, including: advisory opinions, feigned or collusive cases, standing, ripeness, mootness, political questions, and administrative decisions.

Ripeness is the category of justiciability that questions whether the dispute has matured to a point that warrants a judicial decision. The central concern is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all.

Determining whether a controversy is ripe enough to be justiciable involves a two-part inquiry. The court must first determine whether the issues are of the type that would be appropriate for judicial determination. Then the court must consider the hardship that declining to consider the case will have on the parties. The courts will decline to act in cases where there is no need for the court to act or where the refusal to act will not prevent the parties from raising the issue at a more appropriate time.

*Martin*, 1993 WL 241315 at *1-2 (internal citations omitted).

Considering the procedural history in the action *sub judice*, there exists no need for this Court to determine whether filing of the Bank's third amended complaint was properly allowed by the trial court. The third amended complaint served only to add new claims against the Troutman Defendants. Because all of the Bank's claims against the Troutman Defendants were subsequently nonsuited, this issue is not justiciable. The appeal filed by the Troutman Defendants is hereby dismissed.

## VI. Propriety of Grant of Summary Judgment to Old Republic

The Bank asserts that the trial court improperly granted summary judgment in favor of Old Republic. In its order, the trial court stated in pertinent part, "The Court concludes that there are no genuine issues of material fact in dispute as it relates to any theories of recovery alleged by plaintiff The Peoples [Bank] against Old Republic, and, thus, Old Republic is entitled to judgment as a matter of law."

Old Republic asserts that the Bank failed to demonstrate that Old Republic had breached its contract of title insurance with the Bank. In support, Old Republic posits that the title insurance policy specifically and unambiguously exempted the TIP lien from

coverage. The Bank argues, however, that the title insurance policy is ambiguous in this regard.

To specifically address this appeal, the court must consider relevant language of the policy. The title insurance policy contains an attached schedule of "exceptions from coverage," Schedule B-I, which states:

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorney's fees, or expenses that arise by reason of:

* * *

3. A Deed of Trust to secure an indebtedness of $4,500,000.00 and any other amounts payable under the terms thereof . . . for the benefit of Tennessee Investment Properties, LLC as Beneficiary, subordinated by Subordination Agreement.

Following this provision is Schedule B - II, which provides:

[T]he Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

None.

As noted by the Bank, the listed exception states that the TIP lien was "subordinated by Subordination Agreement," which statement was, in fact, erroneous. The Bank asserts that this exception rendered the policy language ambiguous and that such ambiguity should be construed against the drafter, Old Republic. Further, the Bank maintains that Old Republic should be held liable for the actions of its agent, Mr. Troutman. As the Bank explains, Ms. Todd communicated to Mr. Troutman prior to closing that the Bank required a "full" title insurance policy for this loan, meaning that the policy could contain no exceptions. Because Mr. Troutman informed Ms. Todd immediately before the closing that the TIP lien had been subordinated, the Bank insists that it expected and had always made clear that it required the title insurance policy to contain no exceptions. Because the title insurance policy that was delivered nearly two years following the closing included an exception, the Bank contends that Old Republic breached its contract to provide the proper insurance coverage.

Regarding the appropriate construction of a title insurance policy, this Court has

previously explained:

> [T]itle insurance policies are interpreted under the same rules of construction applicable to other contracts. "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). In the absence of fraud or mistake, a contract must be interpreted as written even though it contains terms that may be thought harsh and unjust. Absent any ambiguity, a court must apply to the words used their usual, natural and ordinary meaning. "The courts, of course, are precluded from creating a new contract for the parties." *Griffin v. Shelter Mutual Insurance Company*, 18 S.W.3d 195, 200 (Tenn. 2000); *United States Stove Corp. v. Aetna Life Ins. Co.*, 169 Tenn. 264, 84 S.W.2d 582, 583 (Tenn. 1935).
>
> * * *
>
> A policy of title insurance is a "contract of indemnity under which the insurer for a valuable consideration agrees to indemnify the insured in a specified amount against loss through defects of title to . . . realty in which the insured has an interest." *Sandler v. New Jersey Realty Title Ins. Co.*, 36 N.J. 471, 478-79, 178 A.2d 1 (1962). "Like other policies of insurance, title policies are liberally construed against the insurer and in favor of the insured." *Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.*, 116 N.J. 517, 529, 562 A.2d 208 (1989). "Notwithstanding that principle of construction, courts should not write for the insured a better policy of insurance than the one purchased." *Id*. (citing *Last v. West Am. Ins. Co.*, 139 N. J. Super. 456, 460, 354 A.2d 364 (App. Div. 1976)).

*Wolf v. Clack*, No. E2009-01126-COA-R3-CV, 2009 WL 5173715 at *4-5 (Tenn. Ct. App. Dec. 30, 2009) (other internal citations omitted).

In addition to the title insurance policy, the commitment for title insurance provided, *inter alia*, that Old Republic, "for valuable consideration, commits to issue its policy or policies of title insurance . . . upon payment of the premiums and charges and compliance with the Requirements . . . ." An attached schedule listed the following as a requirement for coverage:

> Release of Deed of Trust in favor of Tennessee Investment Properties, LLC, securing a promissory note dated November 2, 2007, in the original principal amount of $4,500,000.00, recorded in Deed Book 1466, Page

1584, or execution of a Subordination Agreement subordinating the lien of this Deed of Trust.

As Old Republic correctly indicates, the commitment for title insurance provided to the Bank before the loan closing specifically required that the TIP lien be subordinated or released. In addition, the title insurance policy issued after the closing expressly excepted the TIP lien from coverage. Both of these contracts unambiguously referenced the TIP lien and provided that there would be no coverage with regard to such lien. Although the listed exception states that the TIP lien was "subordinated by Subordination Agreement," this does not alter the fact that the TIP lien was listed as an exception from coverage.

Further, use of the inaccurate phrase, "subordinated by Subordination Agreement," within this exception does not render the title insurance policy ambiguous. As this Court has elucidated: "A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions. Rather, a contract is ambiguous only if its meaning is uncertain and is susceptible to more than one reasonable interpretation." *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 n.5 (Tenn. Ct. App. 2000) (internal citations omitted). The argument that this phrase rendered the meaning of the insurance policy uncertain is unavailing. The title insurance policy specifically lists the TIP lien as an exception from coverage; the fact that the encumbrance is denoted as "subordinated" does not diminish the integrity of the express exclusion provision. Because the title insurance policy is not ambiguous, the parties cannot rely upon parol evidence to "alter, vary, or qualify the plain meaning of an unambiguous written contract." *See Dick Broad. Co.*, 395 S.W.3d at 672 (quoting *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005)). As such, the communications between Ms. Todd and Mr. Troutman cannot be relied upon to vary the terms of this unambiguous written contract.

In order to prove a breach of contract, which was the claim asserted by the Bank against Old Republic, the Bank would have to prove (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of contract, and (3) damages caused by such breach. *See ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). In the case at bar, there is a dearth of evidence that Old Republic breached its contractual obligations. The Bank has failed to prove a breach by Old Republic for failing to extend coverage for the TIP lien when both the commitment for title insurance and the title insurance policy expressly exclude coverage concerning this lien. We conclude that the trial court properly granted summary judgment to Old Republic.

11

VII. Compliance with Tennessee Rule of Civil Procedure 56.04

Finally, the Bank asserts that the trial court's order granting summary judgment to Old Republic does not comply with the requirements of a summary judgment order as stated in *Smith v. UHS of Lakeside, Inc*., 439 S.W.3d 303 (Tenn. 2014). In *Smith*, our Supreme Court held in relevant portion:

> we conclude that Tenn. R. Civ. P. 56.04 requires the trial court, upon granting or denying a motion for summary judgment, to state the grounds for its decision before it invites or requests the prevailing party to draft a proposed order. Not only will this requirement assure that the decision is the trial court's, it will also (1) assure the parties that the trial court independently considered their arguments, (2) enable the reviewing courts to ascertain the basis for the trial court's decision, and (3) promote independent, logical decision-making.

*Id*. at 316-17.

The Bank contends that the trial court's order fails to comply with the requirements of *Smith* because such order does not state the grounds upon which the grant of summary judgment was based. *See Smith*, 439 S.W.3d at 314. We note, however, that the *Smith* decision was not rendered until July 15, 2014, nearly two months after the trial court's order granting summary judgment in this case. Further, as our Supreme Court instructed therein:

> We readily agree that judicial economy supports the Court of Appeals' approach to the enforcement of Tenn. R. Civ. P. 56.04 in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision. However, <u>in the future</u>, the resolution of issues relating to a trial court's compliance or lack of compliance with Tenn. R. Civ. P. 56.04 should also take into consideration the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained and is the product of the trial court's independent judgment.

*Id.* at 314 (emphasis added). We note that in the case at bar, a review of the hearing transcript clearly discloses that the order granting summary judgment was the product of the court's independent judgment. We also determine that the enforcement of this order is proper and the absence of specifically stated grounds does not hamper our review in this instance. We therefore conclude that this issue is without merit.

12

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Old Republic. We dismiss the Troutman Defendants' appeal as nonjusticiable. Costs on appeal are assessed one-half to the appellants, Conrad Mark Troutman and Troutman & Troutman, P.C., and one-half to the appellee, The Peoples Bank. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE