(61 Misc. Rep. 490.)

### PALLISER v. TITLE INS. CO. OF NEW YORK.

(Supreme Court, Trial Term, New York County.   December, 1908.)

INSURANCE (§ 507½*)—TITLE INSURANCE POLICY—CONSTRUCTION.

A policy issued by a title insurance company, insuring plaintiff against all loss not exceeding a specified amount by reason of defects in title to certain premises, limits the insured to recovery only for actual damages sustained ; and where insured contracted to sell the premises, subject to certain assessments specified in the policy, and the vendee refused to take title until certain other assessments not specified were paid, insured cannot maintain an action on the policy until he has paid off the assessments or the premises have been sold in enforcement thereof.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1284 ; Dec. Dig. § 507½.*]

Action by Melvin G. Palliser against the Title Insurance Company of New York.   Verdict for plaintiff set aside, and new trial ordered.

Hitchings & Palliser, for plaintiff.

J. A. Deering, for defendant.

GREENBAUM, J.   On July 18, 1907, the defendant issued its policy of title insurance to the plaintiff, covenanting to insure him "against all loss or damage, not exceeding $2,000, which the insured shall sustain by reason of any defect of title of the insured," as described in a certain schedule thereto annexed, marked "A," affecting certain premises on Long Island, "or by reason of the unmarketability of the title of the insured, described in said schedule, to or in said premises, or because of liens· or incumbrances against the same at the date of this policy, excepting the defects, estates, objections, liens, or incumbrances mentioned in Schedule B, etc.   Schedule B contains a list of various taxes and assessments as existing liens against the premises in question.   It appears that on June 24, 1907, the plaintiff entered into a contract with one Van Deventer and others for the purchase of the land described in the policy, upon the payment of the sum of $1,050 in cash, subject, however, to all taxes and assessments of any kind or description then a lien on said premises, and it was with reference to this contract that the defendant was employed to search the title to the said premises and that the aforesaid policy was issued.   After the receipt of the policy, and on September 2, 1907, the plaintiff contracted to sell the property to one Ditmars on the payment of $9,000 in cash and subject to the taxes and assessments specifically described in Schedule B of said policy.   Pending the examination of the title by Ditmars it was ascertained that, in addition to the assessments disclosed in· Schedule B, there were against said premises for the opening of Steinway avenue outstanding unpaid assessments aggregating upwards of $2,000, which the defendant omitted to include in Schedule B in its enumeration of existing assessments, and the purchaser, Ditmars, refused to take title unless allowance was made for the amount of these assessments.   Due and proper notice of the existence of said newly discovered assessments was promptly given by plaintiff to defendant company, which declined to do anything

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the matter. Among other defenses, the defendant insists that the plaintiff has suffered no loss or damage by reason of the alleged omission of assessments in the policy.

A title insurance policy is a contract of indemnity, limiting the insured to a recovery only for actual damages sustained. Front on Guaranty Insurance, § 162. In Trenton Potteries Company v. Title Guarantee & Trust Co., 176 N. Y. 65, 68 N. E. 132, the Court of Appeals, by Werner, J., says:

"The contract is one of insurance against defects in title, incumbrances, liens, and unmarketability. The risks of title insurance end where the risks of other kinds begin. Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance of the policy, is designed to save him harmless through defects, liens, or incumbrances that may affect or burden his title when he takes it. It must follow as a general rule, therefore, that when the insured gets a good title the covenant of the insurer has been fulfilled and there is no liability."

Under the somewhat unusual contract of purchase with Van Deventer the plaintiff would have been obliged to take title, no matter how many tax and assessment liens incumbered the property, and hence the failure of the defendant to discover or disclose these assessments, albeit annoying, occasioned him no pecuniary loss or damage. But the plaintiff insists that, relying upon the correctness of the state of facts set forth in the policy, he entered into a contract with Ditmars, under which he was to receive $9,000 in cash, subject to the liens set forth in the policy, and that by reason of the failure of the defendant to enumerate all the liens he was damaged to the extent of the unnamed liens. He contends that his right to recovery is based upon the following provision of the policy, under which a claim arises, to wit:

"Where the insured shall have contracted in good faith, in writing, to sell the insured estate or interest, and the title has been rejected because of some defect or incumbrance not excepted in this policy, and notice in writing of such rejection shall have been given to this company within 10 days thereafter, this company shall in that case have the option of paying the loss, of which the insured must present proper proof, or of commencing or defending within 30 days after receiving such notice, either in its own name or, at its option, in the name of the insured, some proper action or proceeding begun or to be begun in a court of competent jurisdiction for the purpose of determining the validity of the objection alleged by the vendee of the title, and only in case a final determination is made in such action or proceeding, sustaining the objection to the title, shall this company be liable on this policy."

In the absence of a provision like that just quoted, the insured ordinarily could not maintain an action for damages for breach of a contract of insurance because of the existence of an incumbrance not excepted in the policy, unless he actually suffered loss by reason of the payment or enforcement of the incumbrance. As already stated, the defendant's policy is to be regarded as a contract of indemnity. In this respect it is analogous to a covenant in a deed against incumbrances, and, therefore, subject to the rules applicable to such a covenant. In McGuckin v. Milbank, 152 N. Y. 297, 302, 46 N. E. 490, 492, the court, by Andrews, C. J., says:

"A covenant against incumbrances is treated as a contract of indemnity, and although broken as soon as made, if broken at all, nevertheless a recovery (be-

yond nominal damages) is confined to the actual loss sustained by the covenantee by reason of the payment or enforcement of the incumbrance against the property.  He is not permitted to recover the amount of the outstanding incumbrance, before payment or loss of the property, although its existence may be an embarrassment to his title and subject him to inconvenience."

But the rights of the parties must be determined as of the date when the policy was issued.  If this be so, it is wholly immaterial what contract the plaintiff made with Ditmars, inasmuch, as has already been shown, the failure of the defendant to mention the assessments in question occasioned him no damage.  The provision in the policy as to damage in a case of a sale in good faith is evidently only applicable to a situation where the insured could be damnified by the undisclosed incumbrances.  Concededly the plaintiff has not paid off the assessments in question, and there has been no enforcement of the assessments by sale of the premises or otherwise.  If the assessments were valid liens, the plaintiff could have discharged them by payment and conveyed the title to Ditmars.  He might then have been in a position, if it be assumed that the policy did in fact insure him against these assessments, to properly maintain an action thereunder.

In view of my conclusions, it is unnecessary to consider the many interesting questions discussed in the brief of the learned counsel for the defendant under the further defense that in no event is the defendant liable because of the invalidity of the assessments.  The verdict heretofore directed pro forma against the defendant must be set aside, and a new trial ordered.

Judgment accordingly.