457 So.2d 553 (1984)
SHADA, a Florida Partnership, Appellant,
v.
TITLE & TRUST COMPANY OF FLORIDA, Etc., Appellee.
No. 83-963.
District Court of Appeal of Florida, Fourth District.
October 10, 1984.
*554 R. Hugh Lumpkin of Keith, Mack, Lewis & Allison, Miami, for appellant.
William Robert Leonard of Coleman, Leonard & Morrison, Fort Lauderdale, for appellee.
DELL, Judge.
Shada, a Florida partnership, appeals from an adverse final summary judgment in an action for breach of a title insurance policy and for negligence in failing to list record title defects in the title insurance commitment.
In 1977, appellant entered into contracts to purchase more than twenty lots in Broward County, Florida. In lieu of obtaining an attorney's opinion of title, appellant obtained title insurance commitments issued *555 by appellee's predecessor, Peninsular Title Insurance Company. Appellant thereafter closed on the lots and purchased standard loss title insurance policies based on the previous commitments. The policies provided that "[t]he Company, insures ... against loss or damage ... sustained or incurred by the insured by reason of ... [a]ny defect in or lien or encumbrance on such title... ."
In 1979, appellant entered into a contract to sell the property, promising to deliver marketable title to the lots. The contract purchaser notified appellant that title defects existed in each of the subject lots. The defects consisted of outstanding potential redemptive rights which had not been eliminated through prior foreclosures and certain outstanding judgments which allegedly survived the foreclosure action due to failure to join the judgment holders.
In order to overcome the contract purchaser's objection to title, appellant notified appellee of the defects, made a claim for coverage, and requested appellee to clear the title. Appellee refused to take any action to eliminate the defects, although it appears from the pleadings that appellee offered to insure appellant's buyer against loss arising from these defects, and that appellant rejected this offer. Appellant thereafter successfully quieted title, completed the sale, and then filed the instant action against appellee alleging breach of the title insurance policy and negligence by failure to set forth the title defects in the commitment. The trial court granted appellee's motion for summary judgment and appellant filed this timely appeal.
Appellant contends a question of fact exists as to whether appellee's failure to cure or schedule the title defects constituted a breach of contract or actionable negligence. Appellee argues that the policy only covers an actual loss sustained because of a defect in the title and does not cover a purchaser's refusal to close. Appellee relies on Blessing v. American Title & Insurance Co., 121 So.2d 455 (Fla. 1st DCA 1960), to support its argument that appellant voluntarily quieted title before anyone had asserted a claim against the title and therefore appellee had no duty under the policy to cure the defects.
Appellant responds by asserting this court's decision in Endruschat v. American Title Insurance Co., 377 So.2d 738 (Fla. 4th DCA 1979). In Endruschat, two dentists contracted to purchase property for use as a dental clinic. The title company issued a binder and then a title policy to the dentists which failed to include recorded restrictions limiting the use of the property to single family housing. At the request of the dentists the construction loan institution accepted a mortgagee's policy which contained the same omission. The bank later discovered the deed restrictions and suspended funding of the loan. The title company denied coverage, and the dentists engaged counsel and successfully quieted title nine months later. The dentists filed an action against the title company for reimbursement of the fees and costs incurred to quiet title and damages for increased building costs occasioned by the delay. The title company argued that the bringing of the quiet title suit and the cessation of construction was an unnecessary and purely voluntary act for which it should not be responsible.
This court stated:
To hold as the Title Company here contends is to require the Bank and the dentists to ignore duly recorded restrictions and play Russian Roulette with the surrounding property owners to see whether they will legally enforce the restrictions. Furthermore, once the Title Company knew of the omitted restriction, it was not itself willing to reissue its insurance without including the very restriction which it simultaneously demands that the dentists ignore. It cannot have it both ways.
Id. at 742.
We recognize that appellee offered to reinsure against the title defects which it had omitted from appellant's policy. However, we do not find appellee's offer sufficient to satisfy its obligations under its contract to *556 indemnify appellant for the record title defects which it overlooked.
In Holinda v. Title & Trust Co. of Florida, 438 So.2d 56 (Fla. 5th DCA 1983), petition for review denied, 449 So.2d 265 (Fla. 1984), a title company failed to except four liens in its policy. The insured plaintiffs discovered the liens when they attempted to resell the property. Plaintiffs paid off the lienholders and brought suit against the title company. The title company denied their claim and argued that they had "no cause of action ... until there was an actual loss under the policy, and [that] payment of a claim or judgment before execution against the property amount[ed] to a voluntary settlement of the claim." Id. at 57. The Fifth District Court of Appeal rejected this argument and held:
that the satisfaction of an outstanding judgment which is a valid, enforceable lien on the real property does not constitute a "voluntary satisfaction." See Endruschat v. American Title Ins. Co., 377 So.2d 738 (Fla. 4th DCA 1979). But see Blessing v. American Title & Ins. Co., 121 So.2d 455 (Fla. 1st DCA 1960). As shown here, the satisfaction of such claims was necessary in order to complete the sale of the property.
Id. at 57.
Similarly, we reject appellee's argument that appellant did not sustain an "actual loss" under the policy.
Summonte v. First American Title Insurance Co., 180 N.J. Super. 605, 436 A.2d 110 (Ch.Div. 1981), aff'd, 184 N.J. Super. 96, 445 A.2d 409 (App.Div. 1981), petition for certification denied, 89 N.J. 418, 446 A.2d 148 (1982), provides a comprehensive analysis of cases which have construed questions similar to those presented by this appeal. The court, quoting from Jarchow v. Transamerica Title Insurance Co., 48 Cal. App.3d 917, 122 Cal. Rptr. 470 (1975), suggests that title insurance policies "must be construed so as to give the insured the protection which he reasonably had a right to expect... ." 180 N.J. Super. at 614, 436 A.2d at 115. The court stated:
Any requirement of "actual loss," examined in the light of present facts and modern decisions, is a requirement which must be read liberally, not strictly. Nothing less can result from application of the universal rules which require insurance policies to be so interpreted and, further, to be construed in a manner which satisfies the expectations of the insured. Courts, faced with the enforcement of title insurance obligations, speak of indemnification but act in broader terms.
Id. at 613, 436 A.2d at 114.
The Summonte court reached a conclusion similar to that of Judge Letts in Endruschat when it stated:
Any concept of fair dealing requires the company to remove the title defect without insisting upon an "actual loss" as it defines that unworkable term.
Id. at 616-617, 436 A.2d at 116.
The fact that the overlooked defects came to light only when appellant attempted to sell the property does not change the fact that the defects existed at the time the policy issued and that appellant purchased the policy to have insurance to protect against such an occurrence. We hold that appellee had a duty under its contract to cure the defects and its failure to do so entitles appellants to damages. Thus we decline to follow the holding in Blessing v. American Title & Insurance Co., supra.
Next, with respect to the negligence count, appellee moved at an early stage in this proceeding to dismiss Count II of appellant's complaint. Count II asserted a claim based on alleged negligence by appellee in failing to schedule certain record title defects in its title insurance commitment. The trial court denied appellee's motion to dismiss and later denied appellee's first motion for summary judgment, which sought judgment as to both counts of appellant's complaint. Appellee directed its second motion for summary judgment, which we have before us, only to the contract count. Therefore, appellant argues that its claim for negligence remains pending in the trial court. We agree.
*557 Appellee contends that appellant cannot maintain an action for negligence because:
[T]he exclusions in a title insurance policy are those items for which loss will not be compensated. If then there is no listing of outstanding redemptive rights in the exclusion portion of the policy, then the assertion of the outstanding redemptive right is a loss which the title company must address and defend the possession, use and enjoyment of the property in favor of its insured. Plaintiff simply cannot have it both ways. If there is a contract action, it is because the item complained of was not listed as an exclusion.
As we see it, appellee simply argues that the contract precludes an action for damages sustained as a result of its negligence because the loss would be covered under the policy. We find no merit in this argument. Appellee cannot hide behind its contract to avoid appellant's claim for damages arising out of its alleged negligence in searching the title and scheduling the defects.
The right of action on the contract, and the right to sue for the breach of the collateral duty are distinct, the only limitation on a suit for either or both being that the same party cannot be compensated twice over for the same wrong, once for the breach of contract and again for the tort. Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N.E. 503, 12 L.R.A. (N.S.) 924, text 933.
Parrish v. Clark, 107 Fla. 598, 603, 145 So. 848, 850 (1933); see also Holbrook v. City of Sarasota, 58 So.2d 862 (Fla. 1952).
Appellant pled that it purchased the title insurance policy in lieu of obtaining an abstract and that it relied upon the commitment to determine the quality of its title prior to the closing of the transaction. The title insurance commitment provides:
Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.
1. Defects, liens, encumbrances, adverse claims, or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof... .
We construe the language of this paragraph to provide that "defects, liens, etc." will be listed as exceptions in the commitment but that they will not appear in the title policy if they are "disposed of" to the satisfaction of the company.
In First American Title Insurance Co. v. First Title Service Co. of the Florida Keys, Inc., 457 So.2d 467 (Fla. 1984), the Supreme Court extended the liability of an abstracter and held:
Where the abstracter knows, or should know, that his customer wants the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, the abstracter's duty of care runs, as we have said, not only to his customer, but to the purchaser. Moreover, others involved in the transaction through their relationship to the purchaser  such as lender-mortgagees, tenants and title insurers  will also be protected where the purchaser's reliance was known or should have been known to the abstracter.
Id. at 473.
We see no reason why the principles applicable to an abstracter should not be applied to a title insurance company where it undertakes the duty to schedule record title defects. The use of a title insurance binder or commitment instead of an abstract and an attorney's opinion of title has become commonplace. A title insurance company has a duty to exercise reasonable care when it issues a title binder or commitment and its failure to do so may subject it to liability in either contract or tort. Summonte, supra; Jarchow, supra.
Therefore we reverse the summary judgment in favor of appellee and remand this cause for further proceedings consistent herewith.
REVERSED and REMANDED.
DOWNEY and HURLEY, JJ., concur.