## Terra Equities Inc. v. First American
## Title Insurance Co.

C.P. of Philadelphia County, March Term 2000, no. 1960.

*Robert Fiebach* and *Jennifer M. McHugh,* for plaintiffs.

*Eugene J. Maginnis,* for defendant.

SHEPPARD JR., *J.,* August 2, 2000—Defendant First American Title Insurance Company, has submitted both a petition to dismiss on the grounds of forum non conveniens and preliminary objections to the complaint. For the reasons set forth in this memorandum opinion, this court has issued a contemporaneous order *denying* the petition to dismiss and *overruling* the preliminary objections.

## FACTS

On April 22, 1993, Commerce Limited Partnership no. 9219[1] entered into a lease agreement (original lease)

---

1. Commerce is a Pennsylvania limited partnership with Terra Equities Inc. the lead plaintiff, as general partner, and Charles McDonald, trustee and Martin E. O'Boyle Sr. as limited partners.

with Irving Baker under which Commerce agreed to lease real property in Orange County, Florida (premises). The original lease also included a provision allowing Commerce to exercise an option (original option) to expand the premises to include an adjoining parcel (expansion area). It was recorded on March 10, 1994.

First American issued a title policy to Commerce to insure Commerce's leasehold and the original option in the premises and the expansion area, with an effective date of March 10, 1994. Under the policy, First American was to insure against loss or damage up to $400,000 incurred by Commerce due to:

"(1) Title to the estate or interest described in schedule A being vested other than as stated therein;

"(2) Any defect in or lien or encumbrance on the title;

"(3) Unmarketability of the title;

"(4) Lack of a right of access to and from the land." Policy at 1.

The policy includes the following provisions regarding the defense and prosecution of actions:

"(a) Upon written request by the insured and subject to the options contained in section 6 of these conditions and stipulations, [First American], at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. . . .

"(b) [First American] shall have the right at its own cost, to institute and prosecute any action or proceeding or to do any act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as

insured, or to prevent or reduce loss or damage to the insured." Policy conditions and stipulations at ¶4.

The policy also includes an option endorsement, which states that:

"With respect to the option to purchase described in schedule B, the option to purchase is hereby incorporated into schedule A of the policy as an interest insured thereby vested in the insured and [First American] insures against loss or damage sustained or incurred by the insured by reason of:

"(a) The unenforceability of the right to exercise the option to purchase except to the extent that such unenforceability or claim thereof is based on the failure of the insured to have fulfilled the terms and conditions of the option.

"(b) The priority over the option to purchase of any conveyance made of the fee simple estate in the land or of any liens or encumbrances created therein after the date of policy, excepting those liens or encumbrances created or consented to by the insured or created by statute in favor of or for the benefit of governmental bodies or public utilities including without limitation real estate taxes, special assessments, demolition liens, drainage liens and water liens."

On August 3, 1994, soon after the issuance of the policy, Commerce and Baker executed an amended lease agreement. This amended lease agreement was recorded on August 15, 1994. On January 27, 1995, Baker and Commerce entered into a second amendment to the original lease. The second amended lease, recorded on April 6, 1995, included an option under which Commerce could demand that Baker convey the premises and the expansion area to Commerce or its designee within 60

days for $350,000. Sometime thereafter, Commerce sought to purchase the premises and the expansion area by exercising the option.

When obstacles to the purchase of the premises and the expansion area arose, Baker and Commerce agreed on May 4, 1995 that Commerce would begin to pay rent for the expansion area under the terms of a restated lease as of June 1, 1995. Although the restated lease has not been produced, Commerce asserts that it grants Commerce exclusive possession of the expansion area. Commerce further asserts that it became the equitable owner of the expansion area as of that date and retained the option allowing it to purchase the expansion area at any time during the term of the restated lease. Under the restated lease Baker did not retain a right to grant easements in the premises or expansion area to others, and, in the event that Commerce exercised the option, Baker was required to convey good and marketable title, free and clear of all encumbrances.

In conjunction with the sale of certain property near the expansion area, and without prior notice to Commerce, Baker granted Brightway Builders Inc. a storm water drainage easement giving Brightway the right to enter the expansion area and make use of a Commerce-built retention pond for storm water run-off and drainage. According to this easement, which was recorded on May 17, 1996, Baker and any future assignees of Baker are responsible for the maintenance of the retention pond for Brightway's benefit.

On June 26, 1997, Commerce gave Baker notice of its intent to purchase the expansion area and set July 15, 1997 as the closing date for the sale. However, due to the encumbrance placed on the expansion area by the

easement, the closing did not take place. Commerce asserts that Brightway entered the expansion premises sometime in December 1997 in order to perform construction work on the storm water retention pond to make it suitable for Brightway's storm drainage needs.

Commerce filed suit (Baker suit) in Florida's Circuit Court for the Ninth Judicial Circuit for Orange County against Baker and Brightway on February 23, 1998 seeking damages and specific performance under the lease agreement, the amended lease agreement, the second amended lease and the restated lease. In the Baker suit, Commerce further sought a declaratory judgment to declare the easement invalid and to quiet title to the expansion area. Commerce also asked for damages for breach of contract and for trespass.

Commerce sent notice to First American of its claim relating to the easement across the expansion area on December 1, 1997. On March 9, 1998, Commerce provided First American with the basis of its claim, asserting that it had sustained damages as a result of the unenforceability of the option and the priority of the easement over the option. Commerce also provided First American with a copy of Commerce's complaint in the Baker suit and asked that First American pay costs and legal fees associated with those counts of the complaint seeking to determine the validity of the easement.

First American responded on March 18, 1998, refusing to cover the costs of the litigation. First American based its denial on the fact that it was not aware of any claim that the easement had priority over the option, although it appears that this is precisely the position taken by Brightway in the Baker suit. Over the next year and one-half, Commerce and First American exchanged cor-

respondence relative to the Baker suit, without any success at resolving the dispute. Commerce claims that, to date, it has incurred in excess of $90,000 in fees and expenses in attempting to clear title to the expansion area.

On March 17, 2000, Terra Equities Inc., Charles McDonald, trustee and Martin E. O'Boyle Sr., plaintiffs, filed this complaint against First American alleging a breach of contract and bad faith. In the complaint, the plaintiffs seek damages in excess of $50,000, together with attorneys' fees, punitive damages, interest and costs.

First American filed preliminary objections on May 15, and plaintiffs have responded. First American filed the petition to dismiss on venue grounds on June 15, and plaintiffs have responded in opposition. Both matters are ripe for determination.[2]

## DISCUSSION

### I. *The Petition To Dismiss on the Basis of Forum Non Conveniens Should Be Denied*

Defendant relies on 42 Pa.C.S. §5322(e), which statute permits Pennsylvania courts to dismiss a matter when the "interests of substantial justice" call for the case to be heard in a forum outside Pennsylvania. For the present analysis, Pa.R.C.P. 1006, which governs changes of venue within the Commonwealth, must also be discussed. This is because both section 5322(e) and Rule 1006 are derived from the common-law doctrine of forum non conveniens, and both authorities are applied in the same way in cases involving this issue. *Jones v. Borden Inc.,*

---

2. The venue petition will be discussed first in this memorandum opinion.

455 Pa. Super. 110, 114, 687 A.2d 392, 394 (1996); *Shears v. Rigley,* 424 Pa. Super. 559, 564, 623 A.2d 821, 824 (1993).

Granting a petition to dismiss for forum non conveniens requires, first, that there be an alternative forum available to the plaintiff. *Farley v. McDonnell Douglas Truck Services Inc.,* 432 Pa. Super. 456, 462, 638 A.2d 1027, 1030 (1994). If this is established, the defendant has the burden of demonstrating that the plaintiff's choice of forum is vexatious or oppressive. *Dulaney v. Consolidated Rail Corp.,* 715 A.2d 1217, 1219 (Pa. Super. 1998).

A. The Availability of an Alternative Forum

Under Pennsylvania law, a court may not dismiss a complaint on the ground of forum non conveniens "when such a decision results in the plaintiff being unable to institute an action elsewhere." *Farley,* 432 Pa. Super. at 463, 638 A.2d at 1030. A trial court that fails to consider the availability of an alternative forum will be found to have abused its discretion, *Jones,* 455 Pa. Super. at 115, 687 A.2d at 394, although "[a] stipulation made by a defendant that he or she will submit to service of process and not raise the statute of limitations as a defense has been accepted by the courts as eliminating the concern regarding the availability of an alternative forum." *Id.,* 455 Pa. Super. at 116, 687 A.2d at 395.

In this matter, First American has agreed to submit to Florida jurisdiction and will waive defenses related to the timeliness of the action, provided that the plaintiffs reinstate the action in Florida within 45 days of dismissal by the court. However, First American's offer is illusory. While Florida law permits a person to bring a civil claim against an insurer based on a failure to settle claims

in good faith, a claimant is required to give the Florida Department of Insurance and the insurer 60 days notice of the violation. Fla. Stat. ch. 624.155 (2000). This renders First American's offer to waive defenses meaningless since the 60-day waiting period would prevent the plaintiffs from reinstating the action in Florida within 45 days of dismissal.

If First American were to extend the waiting period or to waive objections to any statute of limitations restrictions specifically, an alternative forum for this matter indeed exists. However, without such a concession, it is necessary to examine Florida statutory law and civil procedural rules to determine whether Florida serves as an alternative forum.

Plaintiffs do not argue that Florida is unavailable as an alternative forum,[3] and it appears that Florida could serve such a function: Fla. Stat. ch. 48.183 would grant Florida courts jurisdiction over First American,[4] while Fla. Stat. ch. 624.422 addresses service of process on an insurance company.[5] In addition, the statute of limita-

---

3. Although First American argues that Florida is a more appropriate forum, it does not speak directly to Florida being available as an *alternative* forum.

4. Fla. Stat. ch. 48.193 grants jurisdiction over entities "operating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]," as well as any person "breaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Even in the absence of First American's submission to jurisdiction, it admits in its brief that the policy was issued and delivered in Florida.

5. In Florida, service of process on a licensed insurance company is made on the insurance commissioner and treasurer. The court has inferred that First American is an insurance company licensed in Florida.

tions in Florida for breach of contract actions is four years, Fla. Stat. ch. 95.11(3)(k), removing it as a concern in this matter.[6] Thus, Florida constitutes an alternative forum in this matter.

## B. The Vexatious and Oppressive Test

In evaluating a petition to dismiss on the grounds of forum non conveniens, "[a] plaintiff's choice of forum is given great weight and a defendant has the burden in asserting a challenge to the plaintiff's choice of venue." *Shears,* 424 Pa. Super. at 564, 623 A.2d at 824. See also, *Goodman by Goodman v. Pizzutillo,* 452 Pa. Super. 436, 445, 682 A.2d 363, 367 (1996) (stating that a "party seeking a change of venue bears a heavy burden of justifying the request . . ."). This burden is increased when a plaintiff has chosen to litigate in his or her home forum. *Page v. Ekbladh,* 404 Pa. Super. 368, 372-73, 590 A.2d 1278, 1280 (1991). Because Pennsylvania is the home state of Terra (the lead plaintiff) and Commerce, this court should give the plaintiffs' choice of forum appropriate deference.

To sustain a motion to dismiss for forum non conveniens, a petitioner must show that the proceedings would be vexatious or oppressive:

"[T]he defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing with facts on the record that the plaintiff's choice of forum was designed to harass the defendant,

---

6. Given the fact that actions contributing to the breach are alleged to have occurred as recently as 1999, this court feels comfortable that the statute of limitations would not be an obstacle to prosecuting this claim in Florida.

even at some inconvenience to the plaintiff himself. . . . Alternatively, the defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute. But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him." *Cheeseman v. Lethal Exterminator Inc.,* 549 Pa. 200, 213, 701 A.2d 156, 162 (1997).[7]

The defendant's burden requires a demonstration of claimed hardships on the record, *Jones,* 455 Pa. Super. at 115, 687 A.2d at 394, although there is no necessity for an evidentiary hearing on a petition. *Cheeseman,* 549 Pa. at 213 n.8, 701 A.2d at 162 n.8.

As evidence of vexatiousness or oppressiveness, a petitioner must provide a court with the names of witnesses who are to be called, a general statement of what their testimony will cover and what hardships the witnesses would suffer. *Johnson v. Henkels & McCoy Inc.,* 707 A.2d 237, 240 (Pa. Super. 1997). See also, *Petty v. Suburban General Hosp.,* 363 Pa. Super. 277, 285, 525

---

7. In the past, Pennsylvania courts allowed defendants unable to meet the vexatious and oppressive test to use a balancing test based on private and public factors, as adopted in *Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827 (1989). However, current case law requires, "before any transfer of venue may be granted, that the defendants establish on the record that litigation in Philadelphia would be oppressive or vexatious." *Cheeseman,* 549 Pa. at 211, 701 A.2d at 161. See also, *Johnson v. Henkels & McCoy Inc.,* 707 A.2d 237, 239-40 (Pa. Super. 1997) (stating that Pennsylvania courts may not use the "ill-advised" private and public interest test and that the Pennsylvania Supreme Court has declared the test "improper").

A.2d 1230, 1234 (1987) (stating that "[i]f a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied"); *Hoose v. Jefferson Home Health Care Inc.,* 754 A.2d 1, 5 (Pa. Super. 2000) (stressing that "there is a vast difference between a finding of inconvenience and one of oppressiveness"). Furthermore, a defendant's claims "that no significant aspect of the case involves the chosen forum, and that litigating in another forum would be more convenient . . . do not amount to a showing that the chosen forum is oppressive or vexatious."[8] *Cheeseman,* 549 Pa. at 214, 701 A.2d at 162.

First American has cited a number of burdens that it urges make litigating in Pennsylvania vexatious and oppressive: (a) the policy was issued by the Florida office of First American and delivered to Commerce in Florida, (b) the premises and expansion area are in Florida, (c) Florida has an interest in regulating insurance policies covering land located in the state, (d) the Baker suit has been brought in Florida, (e) the offenses alleged occurred in Florida, (f) the witnesses and evidence relevant to this case are in Florida, and thus possibly outside the subpoena power of a Pennsylvania court, (g) Florida law, which First American claims governs this case, is better interpreted by a Florida court,[9] and (h) proceeding in a

---

8. In reality, then, non conveniens is a misnomer.

9. In analyzing insurance policies, Pennsylvania courts are to "apply the law of the state having the most significant contacts or relationships with the particular issue." *Caputo v. Allstate Insurance Co.,* 344 Pa. Super. 1, 5, 495 A.2d 959, 962 (1985). While it appears that Florida law would govern the policy, such a determination should be reached only after each side has presented arguments as to which state's law should govern and why. Because neither party has briefed the

Pennsylvania court will open complex conflict of laws issues.

A number of these burdens are not, in fact, burdens, but rather considerations that would have been relevant under the now defunct public and private interests test. Among these are the place of issuance and delivery of the policy; Florida's interest in regulating insurance policies; and the location of the alleged offenses. Because these factors have no bearing on whether Pennsylvania constitutes a vexatious and oppressive forum, they cannot be controlling.

Difficulties arising from out-of-state witnesses and evidence must be specifically raised by the moving party. *Petty,* 363 Pa. Super. at 285, 525 A.2d at 1234. Here, First American has supplied an affidavit from Rotkowitz stating that:

"(5) Most, if not all of the witnesses and evidence to the occurrences alleged in the complaint herein are located and reside in Florida.

"(6) Most, if not all, of the employees and former employees of First American who are witnesses to the occurrences alleged in the complaint herein are located and reside in the state of Florida. . . . Transporting these witnesses from Florida for trial in this action would be a considerable expense."

The affidavit makes no mention of the number of witnesses required or what their testimony will cover.[10] In

choice of law issue, it would be premature for the court to reach a conclusion on that topic. Consequently, this opinion references both Pennsylvania and Florida law when addressing substantive matters.

10. Furthermore, the plaintiffs have indicated a willingness to take the deposition of Rotkowitz, the only First American witness it anticipates, in Florida. Plaintiffs also claim that all necessary documentation has already been attached to the complaint.

the absence of such details, First American cannot be said to have met the requisite burden.

First American points out that the Baker suit is before the Circuit Court for the Ninth Judicial Circuit in Orange County, Florida. However, First American goes no further, leaving to conjecture why a tangentially related case in which First American is not a party contributes to the current forum's being vexatious and oppressive. Moreover, the fact that the premises and expansion area are located in Florida is irrelevant in that this is an action for breach of insurance contract and not a real estate dispute. As a result, the location of the property is not controlling.

Finally, First American argues that bringing the case in a Florida court will avoid a conflict of laws issue. However, because all correspondence relating to the alleged breach was addressed to Commerce's counsel in Philadelphia, the plaintiffs assert that the contract breach took place, at least in part, in Pennsylvania. Consequently, a transfer to Florida will not avoid the conflict of laws question, and such a dispute should not impact on the venue issue.

In summary, First American has failed to meet the heavy burden of showing that the plaintiffs' choice of forum is vexatious or oppressive. As a result, the petition must be denied.

## II. *The Preliminary Objections Should Be Overruled*

In support of its demurrer, First American makes three essential arguments in the preliminary objections:

(1) Commerce has not suffered any actual loss, as required before recovery can be permitted under a title insurance policy;

(2) To the extent that Commerce has suffered actual loss, the actual loss suffered is not covered by the policy; and

(3) Even if Commerce has suffered actual loss covered by the policy, First American has no obligation to cover actions prosecuted by Commerce to secure title to the expansion area.

Under either Florida or Pennsylvania law, First American has failed to satisfy the burden necessary to sustain the preliminary objections.

## A. No Actual Loss or Damage

The defendant's primary argument is that the policy is an indemnification policy for which the "plaintiff is bound to show actual loss sustained before there can be a recovery." *Pennsylvania Company for Insurances on Lives and Granting Annuities v. Central Trust and Savings Company,* 255 Pa. 322, 326, 99 A. 910, 911 (1917). See also, *Goode v. Federal Title and Insurance Corp.,* 162 So.2d 269, 270 (Fla. Dist. Ct. App. 1964). First American has asserted that, because Commerce cannot show actual loss, the plaintiffs are not entitled to recover under the policy.

In contrast to the narrow interpretation suggested by First American, the term "actual loss" has been construed liberally by both Florida and Pennsylvania courts. See *Fifth Mutual Building Society of Manayunk's Appeal,* 317 Pa. 161, 165, 76 A. 494, 495 (1935) (holding that "when the insured gets a bad title, or the policy has been otherwise breached, the covenant of the insurer has not been fulfilled, and there is a *liability.* A liability having attached, the only thing that remains is to ascertain *its*

*extent* in terms of dollars") (emphasis in original); *Narberth Building & Loan Association v. Bryn Mawr Trust Co.,* 126 Pa. Super. 74, 190 A.2d 149 (1937); *Shada v. Title & Trust Co. of Florida,* 457 So.2d 553 (Fla. Dist. Ct. App. 1984); *Holinda v. Title & Trust Co. of Florida,* 438 So.2d 56 (Fla. Dist. Ct. App. 1983).[11]

Plaintiffs have implied that the "actual loss" necessary to maintain their claim arises from: (1) the expansion area is worth less encumbered by the easement than unencumbered; (2) plaintiffs have incurred significant costs in attempting to clear title to the properties; (3) Baker has violated his obligation to grant Commerce exclusive use of the expansion area; and (4) Brightway has trespassed on the property and has undertaken construction to make the expansion area more conducive to its own needs. Given the operative pleading and applying the above guidelines it is difficult to conclude that Commerce has suffered no damage. The preliminary objection on this ground should be overruled.

### B. Loss Not Covered By Policy

Similarly, the court cannot dismiss the complaint based on First American's claim that the language of the policy requires Commerce to exercise or to attempt to exercise the option before it can claim it has sustained any dam-

---

11. To bolster its Florida law argument, First American cites *Blessing v. American Title & Insurance Co.,* 121 So.2d 455 (Fla. Dist. Ct. App. 1960). Notwithstanding that court's holding, First American's use of *Blessing* is unconvincing, as the harsh logic of *Blessing* has been repudiated. In both *Holinda* and *Shada,* the courts specifically considered the holding of the *Blessing* court, 438 So.2d at 57; 457 So.2d at 556, and declined to follow that earlier decision.

ages under the policy.[12] In addition to the court's concern that such an interpretation could put Commerce in an untenable position,[13] the policy itself does not support such a reading.[14] Thus, First American has failed to meet the burden necessary to require this court to dismiss the complaint on this basis.

---

12. Interpretation of an insurance policy is a matter of law to be decided by the court. *Curbee Ltd. v. Rhubart,* 406 Pa. Super. 505, 509, 594 A.2d 733, 735 (1991); *Jones v. Utica Mutual Insurance Co.,* 463 So.2d 1153, 1157 (Fla. 1985). In interpreting an ambiguity, an insurance policy should be liberally construed in favor of the insured party. *Techalloy Co. v. Reliance Insurance Co.,* 338 Pa. Super. 1, 6, 487 A.2d 820, 823 (1984); *U.S. Fidelity & Guar. Co. v. Romay,* 744 So.2d 467, 471 (Fla. Dist. Ct. App. 1999). This requires the court to maximize the coverage provided under the insurance policy in question. *Penn-Air Inc. v. Indemnity Insurance Co. of North America,* 439 Pa. 511, 517, 269 A.2d 19, 22 (1970); *Union-Am. Insurance Co. v. Maynard,* 752 So.2d 1266 (Fla. Dist. Ct. App. 2000).

13. If First American's logic is to be followed, before Commerce acquires the expansion area, it is not entitled to coverage from First American because Brightway has not asserted the easement against Commerce as the owner of the expansion area. On the other hand, if Commerce purchases the expansion area, First American could then argue that Commerce acquired title with notice of the easement, thus precluding coverage.

14. According to the option endorsement, Commerce is entitled to coverage under the policy for damages sustained due to the unenforceability of the option, the priority of an encumbrance over the option or any defect in the expansion area title. The policy became effective March 10, 1994 and continues to be effective so long as Commerce "retains an interest in the land," policy conditions and stipulations at paragraph 2, implying that any inability to enforce or interference with the option or defect in the expansion area title any time after that date will trigger coverage under the policy. In addition, the option endorsement specifically covers encumbrances created after the date of the policy.

## C. No Suit To Defend

First American points to section 4 of the conditions and stipulations of the policy, which, it claims, does not require coverage of actions prosecuted by Commerce to secure title to the expansion area. However, the defendant's position in this regard is not persuasive. Under Florida law, a company insuring title has "a duty under its contract to cure the defects [in title] and its failure to do so entitles the [insured party] to damages." *Shada,* 457 So.2d at 556. See also, *Endruschat v. American Title Insurance Co.,* 377 So.2d 738, 742 (Fla. Dist. Ct. App. 1979) (stating that the position supported by the defendant would "ignore duly recorded restrictions and play Russian roulette with the surrounding property owners to see whether they will legally enforce the restrictions"). This affirmative duty suggests strongly that this objection should be overruled.

Although there is no Pennsylvania law on this precise issue, treatises recognize that a title insurer's duty to quiet title will arise when there are "present in the facts and circumstances of the case some indicia that the encumbrance with which the policyholder is concerned is a genuine cloud on his title." 9 Appleman, Insurance Law and Practice §5214, pp. 87-88 (acknowledging that "a title insurer has a duty to take necessary steps to relieve against defects in the title, which duty arises when it is notified of the existence of a defect"). Further, an insured party is entitled to attorneys' fees incurred in removing a defect, "even though no suit is commenced against the insured due to the defect." Couch on Insurance 3d §185:86.

This court finds instructive the case of *Summonte v. First Am. Title Insurance Co.,* 436 A.2d 110 (N.J. Super.

Ct. Ch. Div. 1981), in which First American issued a title insurance policy with language almost identical to that used in the policy.[15] In analyzing the language of that policy, the New Jersey court concluded that "after the company had received notice of the title defect . . . and no litigation had commenced requiring a defense, the insurer was *obliged* to remove the defect." 436 A.2d at 115-16. (citations omitted) In sum, this court cannot conclude that Pennsylvania law would serve as a bar to the plaintiffs' action.

For these reasons, this court will issue a contemporaneous order which denies the petition to dismiss and overrules the preliminary objections.

### ORDER

And now, August 2, 2000, upon consideration of: (a) defendant First American Title Insurance Company's preliminary objections to plaintiffs' complaint and plaintiffs' response and (b) defendant's petition to dismiss on the grounds of forum non conveniens and plaintiffs' response, the pertinent respective memoranda and all matters of record, and based on the memorandum opinion being filed contemporaneously with this order, it is hereby ordered that: (a) defendant's preliminary objections are overruled, and (b) defendant's petition to dismiss on the grounds of forum non conveniens is denied.

---

15. As set forth in the court's opinion, the policy in question provided that "The company shall have the right at its own cost to institute and without undue delay prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as insured, and the company may take any appropriate action under the terms of this policy, whether or not it shall be liable thereunder, and shall not thereby concede liability or waive any provision of this policy." 436 A.2d at 115.